**UNTIED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS**

**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| John Schield and Alexis Schield | § | |
| | § | |
| | § | Civil Action No. |
| | § | |
| v | § | 5:18-cv-1040 |
| | § | |
| | § | |
| | § | |
| I.Q. Data International, Inc. d/b/a | § | |
| | § | |
| RentCollect Global | § | |

**Complaint**

_____

## Introduction

1. Congress enacted the Fair Debt Collection Practices Act to stop the mistreatment of consumers by debt collectors. In the preamble to the FDCPA Congress stated that abundant evidence of the use of abusive, deceptive, and unfair practices by debt collectors contribute to the number of personal bankruptcies, martial instability, the loss of jobs, and invasions of individual privacy.

2. Different provisions of the FDCPA provide protections from various acts. Harassment or abuse, false or misleading

representations, and unfair practices are a non-exhaustive list of the general categories of acts prohibited by the FDCPA.

3. The Schields bring this action for the knowing misrepresentations and harassment by Defendant.

## Jurisdiction & Venue

4. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

5. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred here.

## Parties

6. Plaintiffs, John Schield and Alexis Schield are a natural persons who resided in in San Antonio, Bexar County, Texas at all the times the acts and omission giving rise to this action occurred.

7. Defendant, I.Q. Data International, Inc. d/b/a RentCollect Global, is a Washington for-profit corporation who may be served via its registered agent Corporation Service Company at 300 Deschutes Way SW, Ste 304, Tumwater, WA 98501.

**Facts**

8. IQ regularly collects, and attempts to collect, defaulted debts which were incurred, or alleged to have been incurred, for personal, family, or household purposes on behalf of others using the U.S. Mail, telephone, and internet.

9. The principal purpose of IQ is the collection of such debts.

10. The debt that the Schields allegedly incurred was for unpaid rent (the "Debt").

11. John Schield is a United States Army officer.

12. As part of his duties a soldier, Mr. Schield accesses classified information.

13. Due to the nature of his work, Mr. Schield is in a secure facility during his work hours. He is required to keep his cell phone kept outside of this facility.

14. In order to maintain access to this classified information the Army monitors his credit report.

15. Before being stationed in San Antonio, Mr. Schield was stationed in Tacoma, Washington.

16. After receiving orders for a permanent change of station, he told his apartment complex in Tacoma that he would be moving.

17. He tendered a copy of his orders and 30 days rent before moving out.

18. After reporting for duty in San Antonio, Mr. Schield began receiving calls to his cell phone.

19. After leaving work, he saw several calls from an unfamiliar number.

20. He called the number back and learned that it was IQ trying to collect an alleged debt from his former apartment complex in Tacoma.

21. He called the apartment complex and went over his account. It turned out that the apartment complex owed him money.

22. The complex mailed him a letter stating that a refund check would be sent. The letter included a statement of move out charges

23. Exhibit A is a true and correct copy of the letter and statement the apartment complex sent him, except that it has been redacted per Fed. R. Civ. P.  5.2.

24. In an email dated August 1, 2018 Mr. Schield forwarded this letter and statement to IQ.

25. Exhibit B is a true and correct print-out of this email showing that the letter and accounting from the complex were attached, except that the email has been redacted per Fed. R. Civ. P. 5.2.

26. IQ continued to call, attempting to collect a debt that Schield did not owe after receiving proof that he did not owe it.

27. On or about September 8, 2018 IQ began reported the debt on the Schields' credit reports.

28. Exhibit C is a true and correct copy of a cell phone screenshot of Mr. Schield's credit report.

29. Because the Army monitors Mr. Schield's credit report, he disclosed the alleged debt to and accompanying false credit reporting to his chain of command.

30. IQ called Mr. Schield's cell phone approximately 15 times and Mrs. Schield's cell phone 7 times.

31. On information and belief IQ used an automatic telephone dialing system to place calls to the Schields' cell phones.

**First Cause of Action – Fair Debt Collection Practices Act**

32. IQ is a debt collector as defined by 15 U.S.C. § 1692a(6).

33. The Debt is a debt as defined by 15 U.S.C. § 1692a(5).

34. The Schields are consumers as defined by 15 U.S.C. § 1692a(3).

35. IQ's calls and false credit reporting are communication as defined by 15 U.S.C. § 1692a(2).

36. IQ violated the FDCPA in that:

    a. It communicated credit information which it knew or should have known to be false in violation of 15 U.S.C. § 1692e(8);

    b. Falsely representing the character, amount, or legal status of a debt in violation of 1692e(2)(A);

    c. Using a false representation in collecting a debt in violation of 15 U.S.C. § 1692e(10); and

    d. Failing to send notice of debt within five days of this initial communication as required by 15 U.S.C. § 1692g.

37. These violations caused Mr. Schield embarrassment, humiliation, and frustration in that he had to report this, a debt he did not owe, to his chain of command.

**Second Cause of Action – Telephone Consumer Protection Act**

38. The Schields cellular telephone numbers were assigned to a cellular telephone service as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

39. IQ maintains an automatic telephone dialing system as defined

    by 47 U.S.C. § 227(a)(1).

40. IQ used this automatic telephone dialing system to place calls to

    the Schields' cell phones in violation of 47 U.S.C. §

    227(b)(1)(A)(iii).

41. IQ's calls were not for emergency purposes.

42. The Schields never gave prior express written consent to IQ

    permitting it to call their cell phones with an automatic

    telephone dialing system.

**Jury Demand**

43. Plaintiff demands this case be tried before a jury.

**Prayer for Relief**

Plaintiff prays, that this Court enter judgment against Defendant and

in favor of Plaintiff for:

   a.  Actual damages per 15 U.S.C. § 1692k(a)(1);

   b.  Statutory damages per 15 U.S.C. § 1692k(a)(2);

   c.  Attorney's fees, costs, and litigation expenses per 15 U.S.C. §

      1692k(a)(3);

d. Statutory damages of $500 for each violation of the Telephone Consumer Protection Act per 47 U.S.C. § 227(b)(3)(B);

e. Statutory damages of $1,500 for each knowing and/or willful violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C); and

f. All other and further relief available in law or in equity.

Dated: October 3, 2018                    Respectfully Submitted,

/s/William M. Clanton
William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie
San Antonio, TX 78216
210 226 0800
210 338 8660 fax
bill@clantonlawoffice.com